Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard, First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEREK DORRIEN, | Case No.: |
| Plaintiff, | **Complaint For:** |
| v. | (1) Violation of § 14(a) of the Securities Exchange Act of 1934 |
| CARLOTZ, INC., LINDA B. ABRAHAM, STEVEN G. CARREL, NANXI LIU, DAVID R. MITCHELL, KIMBERLY H. SHEEHY, JAMES E. SKINNER, and LUIS IGNACIO SOLORZANO, | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Derek Dorrien ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to his, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against CarLotz, Inc. ("CarLotz" or the "Company"), CarLotz's Board of Directors (the "Board" or the "Individual Defendants," collectively with CarLotz and the Board, the "Defendants"), for violations of Sections 14(a) and

20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), as a result of efforts to sell the Company to Shift Technologies, Inc. ("Parent") via merger subsidiary Shift Remarketing Operations, Inc. ("Merger Sub," and together with Parent, "Shift"), and to enjoin an upcoming stockholder vote on an stock and cash proposed transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 12, 2022 filing with the United States Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, CarLotz shareholders will receive a 0.692158 share of Shift common stock for each share of CarLotz common stock owned. As a result, CarLotz will become an indirect wholly-owned subsidiary of Shift.

3.      Thereafter, on September 26, 2022, Shift filed a Registration Statement on Form S-4 attaching the proxy statement with the SEC in support of the Proposed Transaction. Further, on October 18, 2022, Shift filed an Amended Registration Statement on Form S-4/A (both collectively referred to as the "Registration Statement") with the SEC in support of the Proposed Transaction

4.      The Proposed Transaction is unfair for several reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement in an effort to convince Plaintiff to vote in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below,

the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for CarLotz, Shift, and the pro forma Combined Company, provided by CarLotz management to the Board and the Board's financial advisor William Blair & Company, L.L.C. ("William Blair"), Shift's financial advisor Centerview Partners, LLC ("Centerview") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by William Blair and Centerview, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## **PARTIES**

7.      Plaintiff is a citizen of Georgia and, at all times relevant hereto, has been a CarLotz shareholder.

8.      Defendant CarLotz is a Delaware corporation whose principal executive office is located at 3301 W. Moore St. Richmond, Virginia 23230. CarLotz's common stock is publicly traded on Nasdaq Stock Exchange under the symbol "LOTZ."

9.      Defendant Linda B. Abraham ("Abraham") has served as director of Company at all relevant times.

10.     Defendant Steven G. Carrel ("Carrel") has served as director of Company at all relevant times.

11.     Defendant Nanxi Liu ("Liu") has served as director of Company at all relevant times.

3

12.     Defendant David R. Mitchell ("Mitchell") has served as director of Company at all relevant times.

13.     Defendant Kimberly H. Sheehy ("Sheehy") has served as director of Company at all relevant times.

14.     Defendant James E. Skinner ("Skinner") has served as director of Company at all relevant times.

15.     Defendant Luis Ignacio Solorzano ("Solorzano") has served as director of Company at all relevant times.

16.     The Defendants named in paragraphs 9-15 are referred to herein as "Individual Defendants" or "Director Defendants."

17.     Non-Party Shift is a leading end-to-end auto ecommerce platform transforming the used car industry with a technology-driven, hassle-free customer experience.  Shift is incorporated under the laws of Delaware and has its headquarters in San Francisco, CA. Shift's common stock is publicly traded on the Nasdaq under the symbol "SFT."

18.     Non-Party Merger Sub is a subsidiary of Parent created solely to complete the Proposed Transaction.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20.     Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

22.     CarLotz operates a consignment-to-retail used vehicle marketplace that provides its corporate vehicle sourcing partners and retail sellers of used vehicles with the ability to easily access the retail sales channel. CarLotz, Inc. is headquartered in Richmond, VA.

23.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a May 9, 2022 press release announcing its 2022 First Quarter Financial Results, the Company highlighted such milestones as Net revenue increased 11% to $63.0 million from $56.6 million in the same period in 2021.

24.     Speaking on the positive results, CEO Lev Peker commented in the Press Release, "We have an exceptionally talented team with significant experience that is focused on building the foundation of the Company. I am honored to be leading this impressive team as we deliver on our mission of creating the greatest vehicle buying and selling experience."

25.     The financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by CarLotz. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

26.     Nevertheless, the Individual Defendants have caused CarLotz to enter into the Proposed Transaction.

***The Flawed Sales Process***

27.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

28.     Notably, the Registration Statement fails to disclose whether the "Transaction Committee" formed to evaluate the Proposed Transaction was composed solely of disinterested directors. Further, the Registration Statement fails to disclose what specific powers the Committee had had in evaluating the Proposed Transaction, including whether the committee was empowered to veto a transaction not in the best interests of Common Shareholders.

29.     The Registration statement also fails to disclose adequate reasoning as to why no collar mechanism was negotiated by the Board to avoid a precipitous fall in the value of Shift Stock, despite the transaction being negotiated as an all-stock transaction.

30.     Additionally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms

of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

32.     On August 12, 2022, CarLotz and Shift issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SAN FRANCISCO and RICHMOND, Va.,** Aug. 09, 2022 (GLOBE NEWSWIRE) -- Shift Technologies, Inc. (Nasdaq: SFT), a leading end-to-end ecommerce platform for buying and selling used cars, and CarLotz, Inc. (Nasdaq: LOTZ), a leading consignment-to-retail used vehicle marketplace, announced today that they have entered into a definitive agreement to combine in a stock-for-stock merger. The combined company will continue to trade on Nasdaq under the ticker SFT.
>
> The combination will create the destination for the best online and in-person used car purchasing experience, allowing the customer to seamlessly shop the broadest assortment of used vehicle inventory, and complete the transaction however they prefer.
>
> The merger brings together the most profitable assets of both companies. The two businesses have complementary geographies, with Shift's footprint concentrated on the West Coast, while CarLotz has built a strong presence in the mid-Atlantic region. CarLotz will be able to leverage Shift's proprietary inventory acquisition engine and at-home delivery offering to obtain differentiated inventory and expand its geographic footprint, while Shift will be able to leverage CarLotz's presence to scale its dealer marketplace on the East Coast.
>
> "The Shift and CarLotz teams have admired each other and our respective businesses for quite some time. We've always seen a considerable amount of strategic and cost synergies with a combined entity," said George Arison, Shift's Co-Founder and CEO. "We are strongly convinced that the merger will put us in a position to pursue a profitable future. As such, this is a transformative moment in Shift's history by enabling us to advance our vision to be the end-to-end destination for car ownership that controls its own destiny."
>
> "While this is an exciting day for both companies, the merging of Shift and CarLotz will be most beneficial to consumers looking to buy or sell a used car," said Lev Peker, CEO of CarLotz. "Shift's technology and consumer sourcing abilities

combined with our consignment and retail remarketing expertise will provide one extraordinary, omnichannel experience."

"We see immense opportunity in combining Shift's proprietary acquisition engine, which excels in buying cars from customers, with CarLotz's unique consignment relationships to create a truly differentiated inventory strategy," said Jeff Clementz, Shift's President and incoming CEO. "There's also potential to leverage Shift's back-end technology and online checkout flow at CarLotz's retail locations, to drive significant process and cost efficiencies."

Under the terms of the merger agreement, CarLotz shareholders are expected to receive approximately 0.692158 shares of Shift common stock for each share of CarLotz common stock. The actual exchange ratio will be adjusted at the closing based on Shift's issued and outstanding shares prior to the effective time of the merger, relative to the fully diluted CarLotz shares prior to the effective time of the merger. Based on the expected exchange ratio, upon the closing of the merger Shift's then-current equity holders will own approximately 52.9% of the combined company, and CarLotz's then-current equity holders will own approximately 47.1% of the combined company, calculated on a fully diluted basis. We expect the transaction to close in Q4 2022 subject to CarLotz's and Shift's shareholders' approvals and other customary and regulatory approvals.

Shift is advised by Centerview Partners and Cohen & Company Capital Markets, a division of J.V.B. Financial Group, LLC. as financial advisor and Jenner & Block LLP as legal counsel. CarLotz is advised by William Blair & Company as financial advisor and Freshfields Bruckhaus Deringer LLP as legal counsel.

More information regarding the merger can be found in the presentation on Shift's investor relations website.

### *Potential Conflicts of Interest*

33.     The breakdown of the benefits of the deal indicate that CarLotz insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of CarLotz.

34.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed

Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  While

the Registration Statement provides the following it fails to provide the specific amount of Merger

Consideration that these shares will be exchanged for.

| | Shares Beneficially Owned | |
| --- | --- | --- |
| **Name of Beneficial Owner** | **Number of Shares** | **Percent of Class** |
| **5% Beneficial Owners** | | |
| | | |
| TRP | 21,799,776 | 19.0% |
| Tremblant Capital Group | 7,516,338 | 6.5% |
| **Named Executive Officers, Directors and Certain Executive Officers** | | |
| Nanxi Liu | — | — |
| Lev Peker | 290,178 | * |
| David R. Mitchell | 21,799,776 | 19.0% |
| Steven G. Carrel | 21,799,776 | 19.0% |
| Luis Solorzano | 8,623,175 | 7.4% |
| James E. Skinner | 40,049 | * |
| Linda B. Abraham | 30,049 | * |
| Ozan Kaya | — | — |
| Eugene Kovshilovsky | — | — |
| Kimberly H. Sheehy | 30,049 | * |
| Michael W. Bor | 5,356,261 | 4.6% |
| John W. Foley II | 875,784 | * |
| Daniel A. Valerian | 759,703 | * |
| **All executive officers and directors as a group (12 persons)[16]** | 31,607,723 | 27.0% |

35.     Additionally, Company insiders currently own large amounts of company options,

restricted stock units, and other equity awards, all of which will be exchanged for the merger

consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company, as follows:

**Director and Executive Officer Unvested Equity Awards Summary Table**

| Executive Officers | Unvested CarLotz RSU Awards (#) | Unvested CarLotz RSU Awards ($) | Unvested CarLotz Earnout Acquiror RSUs (#) | Unvested CarLotz Earnout RSUs ($) | Unvested CarLotz Stock options (#) | Unvested Stock options ($) | Estimated Total Cash Value of CarLotz Equity Awards |
|---|---|---|---|---|---|---|---|
| Lev Peker | 2,834,625 | $1,700,775 | 0 | $0 | 0 | $0 | $1,700,775 |
| Ozan Kaya | 1,100,000 | $660,000 | 0 | $0 | 0 | $0 | $660,000 |
| Eugene Kovshilovsky | 600,000 | $360,000 | 0 | $0 | 0 | $0 | $360,000 |
| Thomas W. Stoltz | 172,560 | $103,536 | 0 | $0 | 452,519 | $0 | $103,536 |
| Elizabeth Sanders | 105,321 | $63,193 | 41,887 | $0 | 151,833 | $0 | $63,193 |
| Luis Solorzano | 217,665 | $130,599 | 0 | $0 | 0 | $0 | $130,599 |
| Linda B. Abraham | 217,665 | $130,599 | 0 | $0 | 0 | $0 | $130,599 |
| Steven G. Carrel | 217,665 | $130,599 | 0 | $0 | 0 | $0 | $130,599 |
| Nanxi Liu | 259,787 | $155,872 | 0 | $0 | 0 | $0 | $155,872 |
| David R. Mitchell | 217,665 | $130,559 | 0 | $0 | 0 | $0 | $130,599 |
| Kimberly H. Sheehy | 217,665 | $130,559 | 0 | $0 | 0 | $0 | $130,599 |
| James E. Skinner | 217,665 | $130,559 | 0 | $0 | 0 | $0 | $130,599 |

36.    In addition, certain employment agreements with certain CarLotz executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Golden Parachute Compensation**

| Name | Cash ($) | Equity ($) | Perquisites / Benefits ($) | Total ($) |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| Lev Peker | 3,036,164 | 1,700,775 | 15,600 | 4,752,539 |
| Ozan Kaya | 1,631,014 | 660,000 | — | 2,291,014 |
| Eugene Kovshilovsky | 487,233 | 360,000 | 15,600 | 862,833 |

37.    The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.    Thus, while the Proposed Transaction is not in the best interests of CarLotz, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

39.    The CarLotz Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

40.    Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a. Adequate disclosure as to whether the Transaction Committee was composed solely of disinterested Directors and the powers of the Transaction Committee, including whether the Committee was empowered to veto a transaction not in the best interest of shareholders;

b. Whether the confidentiality agreements entered into by the Company with Shift differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Shift, would fall away; and

d. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

*Omissions and/or Material Misrepresentations Concerning CarLotz and Shift's Financial Projections*

41.     The Registration Statement fails to provide material information concerning financial projections for CarLotz and Shift provided by CarLotz management to the Board, William Blair, and Centerview and relied upon by William Blair and Centerview in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

42.     Notably the Registration Statement reveals that as part of its analyses, William Blair and Centerview reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company."

43.     Therefore, the Registration Statement should have, but fails to provide, certain information in the projections that CarLotz management provided to the Board, William Blair, and Centerview.   Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

44.     With regard to the *Summary of the CarLotz Standalone Forecast* prepared by CarLotz, the Registration Statement fails to disclose material line items for Adjusted EBITDA, including all underlying inputs, metrics, and assumptions, including specifically: Total operating expenses, depreciation, amortization and stock-based compensation.

45.     With regard to the *Summary of Shift Prospective Financial Information* prepared by Shift, the Registration Statement fails to disclose material line items for Adjusted EBITDA, including all underlying inputs, metrics, and assumptions, including specifically: EBITDA, stock-based compensation, non-recurring severance expenses, and acquisition-related expenses.

46.     The Registration Statement also fails to provide material projections for the Pro Forma Company.

47.     The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the William Blair' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.   As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

50.     In the Registration Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51.     With respect to the *Selected Comparable Public Companies Analysis* for Shift as a Standalone entity, the Registration Statement fails to disclose:

  a.   The specific metrics for each company compared;

  b.   The enterprise value for Shift;

  c.   The number of fully diluted outstanding shares of Shfit Common Stock;

  d.   The book value of debt and noncontrolling interests;

  e.   The value of Cash And Cash Equivalents;

  f.   The value of investments in marketable securities;

  g.   The inputs, metrics, and assumptions used to determine an EV/revenue multiple reference range of 0.40x to 0.45x; and

h.   The inputs, metrics, and assumptions used to determine an EV/gross profit multiple reference range of 2.50x to 3.50x.

52.   With respect to the *Discounted Cash Flow Analysis* for Shift as a Standalone entity, the Registration Statement fails to disclose:

a.   The inputs, metrics, and assumptions used to determine an exit-based EV / gross profit multiple of 2.50x to 3.00x;

b.   The inputs, metrics, and assumptions used to determine discount rates ranging from 15.5% to 17.5%;

c.   Shift's weighted average cost of capital; and

d.   The number of fully-diluted shares of Shift Common Stock as of June 30, 2022;

53.   With respect to the *Selected Comparable Public Companies Analysis* for CarLotz, the Registration Statement fails to disclose:

a.   The specific companies compared;

b.   The specific metrics for each company compared;

c.   The inputs, metrics, and assumptions used to determine an EV/revenue multiple reference range of 0.40x to 0.45x;

d.   The inputs, metrics, and assumptions used to determine an EV / gross profit multiple reference range of 2.50x to 3.50x;

e.   The value of cash and cash equivalents as of June 30, 2022; and

f.   The number of fully-diluted shares of CarLotz Common Stock as of August 8, 2022.

54.   With respect to the *Discounted Cash Flow Analysis* for CarLotz, the Registration Statement fails to disclose:

    a.   The terminal value for CarLotz;

    b.   The inputs, metrics, and assumptions used to determine an exit-based EV / gross profit multiple of 2.50x to 3.00x;

    c.   The inputs, metrics, and assumptions used to determine discount rates ranging from 16.5% to 18.5%;

    d.   CarLotz' weighted average cost of capital;

    e.   The value of estimated present value of future tax benefits available to CarLotz from net operating losses carried forward;

    f.   The value of CarLotz's net cash and cash equivalents as of June 30, 2022; and

    g.   The number of fully-diluted shares of CarLotz Common Stock as of August 8, 2022.

55.    With respect to the *Relative Value Analysis*, the Registration Statement fails to disclose:

    a.   The specific companies compared;

    b.   The specific metrics for each company compared;

    c.   The inputs, metrics, and assumptions used to determine a Selected Trading Comparables (Enterprise Value / 2023E Revenue) Implied Exchange ratio of 1.61x – 2.55x;

    d.   The inputs, metrics, and assumptions used to determine a Selected Trading Comparables (Enterprise Value / 2023E Gross Profit) Implied Exchange ratio of 1.48x – 18.91x; and

    e.   The inputs, metrics, and assumptions used to determine a Discounted Cash Flow Analysis Implied Exchange Ratio of 0.33x – 1.40x.

56.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

57.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public CarLotz stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by William Blair*

58.     In the Registration Statement, William Blair describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

59.     With respect to the *Selected Public Companies Analysis* for *Shift, CarLotz,* and the *Implied Exchange Ratio*, the Registration Statement fails to disclose:

> a.  The Enterprise Value / CY 2022E Revenue multiple range used for both the *Management Estimate* and the *Consensus Forecast* as well as the inputs, metrics, and assumptions used to determine the range; and

> b.  The Enterprise Value / CY 2023E Revenue multiple range used for both the *Management Estimate* and the *Consensus Forecast* as well as the inputs,

metrics, and assumptions used to determine the range.

60.     With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

    a.  The assumed terminal value for CarLotz;

    b.  The inputs, metrics, and assumptions used to determine terminal revenue multiples ranging from 0.40x to 0.60x for CarLotz;

    c.  The inputs, metrics, and assumptions used to determine discount rates ranging from 12.0% to 14.0% for CarLotz;

    d.  The weighted average cost of capital for CarLotz;

    e.  CarLotz net cash as of June 30, 2022;

    f.  CarLotz total diluted shares outstanding as of August 5, 2022;

    g.  The assumed terminal value for Shift;

    h.  The inputs, metrics, and assumptions used to determine terminal revenue multiples ranging from 0.40x to 0.60x for Shift;

    i.  The inputs, metrics, and assumptions used to determine discount rates ranging from 12.0% to 14.0% for Shift;

    j.  The weighted average cost of capital for Shift;

    k.  Shift's net debt as of June 30, 2022;

    l.  Shift's total diluted shares outstanding as of August 5, 2022;

    m.  The estimated impact of dilutive securities for Shift;

    n.  The inputs, metrics, and assumptions used to determine an implied exchange ratio range of 0.1986x-1.5284x;

    o.  The assumed terminal value for the Pro Forma Company;

p.  The inputs, metrics, and assumptions used to determine terminal revenue multiples ranging from 0.40x to 0.60x for the Pro Forma Company;

q.  The inputs, metrics, and assumptions used to determine discount rates ranging from 12.0% to 14.0% for the Pro Forma Company; and

r.  The weighted average cost of capital for the Pro Forma Company.

*61.*   With respect to the *M&A Premiums Paid Analysis*, the Registration Statement fails to disclose:

a.  The specific date on which each transaction closed;

b.  The value of each transaction; and

c.  The implied premium range determined as well as the inputs, metrics, and assumptions used to determine the range.

62.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

63.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public CarLotz stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## <u>(Against All Defendants)</u>

64.     Plaintiff repeats all previous allegations as if set forth in full herein

65.     Defendants have disseminated the Information Statement in favor of the Proposed Transaction.

66.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

67.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

68.     The Information Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Information Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

69.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

70.     The Individual Defendants were at least negligent in filing an Information Statement that was materially misleading and/or omitted material facts necessary to make the Information Statement not misleading.

71.     The misrepresentations and omissions in the Information Statement are material to Plaintiff and the Class, and at present fail to provide complete information if such misrepresentations and omissions are not corrected.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against All Defendants)

72.     Plaintiff repeats all previous allegations as if set forth in full herein.

73.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in

connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Information Statement was materially misleading to Company stockholders.

74.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Information Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Information Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Information Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

75.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of CarLotz's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Information Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Information Statement and are therefore responsible and liable for the misrepresentations contained herein.

76.     The Individual Defendants acted as controlling persons of CarLotz within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause CarLotz to engage in the wrongful

conduct complained of herein. The Individual Defendants controlled CarLotz and all of its employees. As alleged above, CarLotz is a primary violator of Section 14 of the Exchange Act and SEC Rule Information Statement. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 4, 2022             **BRODSKY & SMITH**


By:  _/s/ Evan J. Smith_____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*